UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RICHARD STECK, individually and on behalf of  :
all others similarly situated,  :
                      Plaintiff,  :
  :
          -v-                :
  :
SANTANDER CONSUMER USA HOLDINGS  :
INC., THOMAS G. DUNDON, JASON KULAS,  :
JUAN CARLOS ALVAREZ, ROMAN BLANCO, :       14-CV-6942 (JPO)
GONZALO DE LAS HERAS, STEPHEN A.  :
FERRISS, MATTHEW KABAKER, TAGAR  :      OPINION AND ORDER
OLSON, ALBERTO SÁNCHEZ, JAVIER SAN  :
FELIX, JUAN ANDRES YANES, DANIEL  :
ZILBERMAN, CITIGROUP GLOBAL  :
MARKETS INC., J.P. MORGAN SECURITIES  :
LLC, MERRILL LYNCH, PIERCE, FENNER &  :
SMITH INCORPORATED, DEUTSCHE BANK  :
SECURITIES INC., SANTANDER  :
INVESTMENT SECURITIES INC., BARCLAYS :
CAPITAL INC., GOLDMAN, SACHS & CO.,  :
MORGAN STANLEY & CO. LLC, RBC  :
CAPITAL MARKETS, LLC, BMO CAPITAL  :
MARKETS CORP., CREDIT SUISSE  :
SECURITIES (USA) LLC, UBS SECURITIES  :
LLC, WELLS FARGO SECURITIES, LLC, KKR :
CAPITAL MARKETS LLC, SANDLER  :
O'NEILL & PARTNERS, L.P., STEPHENS INC., :
and LOYAL3 SECURITIES, INC.,  :
                  Defendants.  :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Richard Steck ("Steck" or "Plaintiff") brings this putative class action under

sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k and 77*o*,

against Santander Consumer USA Holdings Inc. ("Santander"), a number of its directors (the

"Individual Defendants"), and several underwriters (the "Underwriter Defendants") (collectively,

"Defendants"), all of which took part in Santander's initial public offering ("IPO").  The

complaint alleges that the registration statement filed in advance of the IPO contained material misstatements and omissions.  (Dkt. No. 1 ("Compl.").)

Now before the Court are: (1) a motion by Defendants seeking to transfer the case to the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a); and (2) motions to appoint a party as lead plaintiff under a provision of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1(a)(3).  For the reasons that follow, the motion to transfer is granted, and the motions to appoint a lead plaintiff are denied without prejudice.

## I.   Background and Procedural History

According to the complaint, Santander is a consumer finance company focused on vehicle loans and "unsecured consumer lending."  (Compl. ¶ 2.)  Santander's "primary focus" is in auto lending, and, according to its registration statement, it is a "leader in nonprime auto loan originations."  (*Id.* ¶ 51.)  The complaint's central allegations concern Santander's auto lending business.  Santander's headquarters are located in Dallas, Texas.  (*Id.* ¶ 13.)  Santander's majority owner is Santander Holdings USA, Inc., a subsidiary of Banco Santander, S.A.  (*Id.* ¶ 3.)

Santander filed the final version of its SEC Form S-1 (along with related documents, the "registration statement") on January 22, 2014; the SEC declared the form effective the same day. (*Id.* ¶ 46.)  The registration statement contains, *inter alia*, details on Santander's origination of loans through automotive dealers.  (*Id.* ¶ 50.)  It notes that Santander also "participate[s] in the unsecured consumer lending market, which includes credit cards, private student loans, point-of-sale financing, and personal loans."  (*Id.* ¶ 51.)

The registration statement describes Santander's loan origination and underwriting process, which purportedly employs a "proprietary[] credit-scoring system designed to ensure

consistency and efficiency," along with a credit rating process "supported by an extensive market database that includes nearly 20 years of historical data" on loans "as well as extensive consumer finance third-party data."  (*Id.* ¶ 52.)

The gravamen of the complaint is that the registration statement was false and misleading because it failed to disclose (1) that Santander "engaged in improper practices" in its subprime auto lending business; (2) "misrepresented the quality of the loans" it underwrote; and (3) "misrepresented [its] underwriting standards."  (*Id.* ¶ 49.)  The complaint supports these allegations, in part, with a filing Santander submitted to the SEC on August 7, 2014, in which Santander disclosed that it had received a civil subpoena from the U.S. Department of Justice regarding "the underwriting and securitization of nonprime auto loans since 2007."  (*Id.* ¶ 56.) Santander's stock declined "over 1%" on this news, to a price of $17.95 per share, by the close of business on August 8, 2014.  (*Id.* ¶ 57.)  "This represented a 25% decline in Santander's stock price from the IPO price of $24.00."  (*Id.*)

The Individual Defendants are all alleged to have "signed or authorized the signing" of the registration statement filed with the SEC.  (*Id.* ¶¶ 14-25.)  "Because of their positions and access to material non-public information," the complaint asserts, the Individual Defendants all knew that the registration statement was materially misleading.  (*Id.* ¶ 26.)

This action was filed on August 26, 2014, against Santander, the Individual Defendants, and the Underwriter Defendants.  (Compl.)  On October 27, 2014, motions were filed by Patrick Benard ("Benard"), Deka Investment GmbH ("Deka"), and the City of Dearborn Heights Act 345 Police & Fire Retirement System ("Dearborn Heights"), all seeking to be appointed lead

plaintiff.[1]  (Dkt. Nos. 15, 17, 20.)  On November 6, 2014, Defendants moved to transfer the case

to the Northern District of Texas.  (Dkt. No. 23.)  Only Deka opposed the transfer motion (Dkt.

No. 32), and Defendants replied (Dkt. No. 40).

## II.   Discussion

### A.   Motion to Transfer

Section 1404(a) of Title 28 provides: "For the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."  The purpose of the statute is "to prevent waste of time,

energy and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense."  *Berger v. Cushman & Wakefield of Pa., Inc.*, No. 12 Civ. 9224

(JPO), 2013 WL 4565256, at *4 (S.D.N.Y. Aug. 28, 2013) (internal quotation marks omitted).

"Thus, section 1404(a) proposes a two-part test.  First, the transferee district must be one

where jurisdiction over the defendant could have been obtained at the time suit was brought,

regardless of defendant's consent.  Second, the transfer must be in the interest of justice and

convenience of the parties and witnesses."  *In re CenturyLink, Inc. Sec. Litig.*, No. 13 Civ. 3839

(LTS), 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014) (internal quotation marks and

alterations omitted); *see also Atl. Marine Constr. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 581

(2013) ("[A] district court considering a § 1404(a) motion . . . must evaluate both the

convenience of the parties and various public-interest considerations.").  The factors that a court

must balance include:

---

[1] On November 11, 2014, Benard filed a letter stating that he "does not oppose the competing
motions for appointment as lead plaintiff."  (Dkt. No. 27.)

> (1) the convenience of the witnesses; (2) the convenience of the
> parties; (3) the location of relevant documents and the relative ease
> of access to sources of proof; (4) the locus of operative facts;
> (5) the availability of process to compel the attendance of
> unwilling witnesses; (6) the relative means of the parties; (7) the
> forum's familiarity with the governing law; (8) the weight
> accorded the plaintiff's choice of forum; and (9) trial efficiency
> and the interests of justice.

*Ritchie Capital Mgmt., L.L.C. v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 8513 (PAE), 2015 WL

1611391, at *4 (S.D.N.Y. Apr. 10, 2015). "No single factor is determinative." *Mazuma Holding

Corp. v. Bethke*, 1 F. Supp. 3d 6, 29 (E.D.N.Y. 2014). "[T]he party requesting transfer carries

the burden of making out a strong case for transfer." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N.

Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks omitted); *see also MASTR

Asset Backed Sec. Trust 2007-WMC1 v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 421 (S.D.N.Y.

2012) ("[A] court should not disturb a plaintiff's choice of forum unless the defendants make a

clear and convincing showing that the balance of convenience favors defendants' choice."

(internal quotation marks omitted)).

"While there is no *per se* rule requiring or presumptively favoring the transfer of a

securities-fraud action to the district where the issuer is headquartered, such transfers to the

issuer's home district are routine as a practical matter." *In re AtheroGenics Sec. Litig.*, No. 05

Civ. 61 (RJH), 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006) (internal quotation marks

omitted).

### 1.      Propriety of Transferee Forum

The first question is whether the action could have been filed in the transferee forum.

Venue is permitted in "a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). According to the declaration of a

Santander compliance officer, "[t]he securities filings and press releases at issue in the

complaint[] were prepared at and issued from [Santander's] Dallas headquarters."  (Dkt. No. 25

("Pauner Decl.") ¶ 7.)  Furthermore, under the Securities Act, venue is proper (among other

places) "in the district wherein the defendant is found or is an inhabitant or transacts business."

15 U.S.C. § 77v(a).  Santander's corporate headquarters are in Dallas, Texas (Pauner Decl. ¶ 3),

which is located in the Northern District of Texas.  Finally, there is no dispute that the filing of

the case in the Texas district court would have been proper.  (*See* Dkt. No. 32 ("Deka Br.") at 9

n.6.)  Defendants have thus established that the case could have been filed in the transferee court.

### 2.    Transfer Factors

The convenience factors at issue in this case are the convenience of the parties and

witnesses, the location of operative facts and documents, the availability of process, and the

interests of justice.[2]

### a.    Witness Convenience

"Convenience of both the party and non-party witnesses is probably the single[ ]most

important factor in the analysis of whether transfer should be granted."  *Mazuma*, 1 F. Supp. 3d

at 29-30 (internal quotation marks omitted); *accord Eres N.V. v. Citgo Asphalt Refining Co.*, 605

F. Supp. 2d 473, 480 (S.D.N.Y. 2009).  "When weighing the convenience of the witnesses,

courts must consider the materiality, nature, and quality of each witness, not merely the number

---

[2] It is unnecessary to consider several of the factors here because they do not weigh in either
direction and are undisputed.  First, the courts' familiarity with governing law is neutral in this
action, which is brought under federal law.  *See Berger*, 2013 WL 4565256, at *12 (noting that
"either forum is equally capable of hearing and deciding" questions of federal law).  Second,
neither party argues that the relative means of the parties points in either direction.  (*See* Deka
Br. at 24-25 (stating that this factor is neutral because Deka "is a large institutional investor"
with "ample resources").)  Further, courts in this district have held that, barring the
"demonstration of an undue burden on the plaintiff class," the relative means factor is "neutral in
a securities class action."  *Erickson v. Corinthian Colls., Inc.*, No. 13 Civ. 4308 (PKC), 2013 WL
5493162, at *7 (S.D.N.Y. Oct. 1, 2013) (citing *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d
397, 405 (S.D.N.Y. 1998)).

of witnesses in each district.  Thus, a party seeking transfer on account of the convenience of the witnesses must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014) (citation and internal quotation marks omitted).  "[T]he convenience of non-party witnesses is accorded more weight than that of party witnesses." *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 539 (S.D.N.Y. 2014).

This is a securities fraud action arising from allegedly false or misleading statements or omissions in Santander's registration statement.  The principal witnesses, therefore, will be the Santander officers and employees who prepared for the IPO and drafted and signed the registration statement. *See CenturyLink*, 2014 WL 1089116, at *2 ("In securities actions, key witnesses include those officers, directors, or other actors who participated in preparing or issuing the allegedly false or misleading statements."); *accord In re McDermott Int'l, Inc., Sec. Litig.*, No. 08 Civ. 9943 (DC), 2009 WL 1010039, at *4 (S.D.N.Y. Apr. 13, 2009) (Chin, J.).

Individual Defendants Thomas Dundon, Santander's Chief Executive Officer, and Jason Kulas, Santander's President and Chief Financial Officer, work at Santander's headquarters in Dallas.  (Pauner Decl. ¶¶ 8-9.)  A declaration submitted by Defendants avers that other "likely witnesses with knowledge of material facts regarding the matters set forth in the complaint[]" include non-party Santander employees "involved in the company's loan origination, underwriting and securitization functions," who also work at the company's headquarters in Dallas.  (*Id.*)  The same declaration states that it would be a "significant burden" for Santander's senior executives to attend trial in New York; Dallas, it avers, "would be substantially more convenient." (*Id.* ¶ 9.)  In deciding transfer motions, some courts have considered the fact that individual defendants "form the core of [the company's] senior management," and that transfer

to the district in which the issuer has its headquarters may reduce the "risk of disrupting company operations." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006). Thus, the allegations in the complaint support Defendants' assertion that the Northern District of Texas is a more convenient forum for a substantial number of the most significant witnesses, both those who are parties and those who are not.

Deka counters that several of the Underwriter Defendants are located in New York. (Deka Br. at 11.) But the Underwriter Defendants join the motion to transfer. Courts in this district have held that parties can waive the issue of their own convenience, in which case it is given no consideration in the analysis. *See In re Global Cash Access Holdings, Inc. Sec. Litig.*, No. 08 Civ. 3516 (SWK), 2008 WL 4344531, at *4-5 & n.8 (S.D.N.Y. Sept. 18, 2008); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1154 (S.D.N.Y. 1995) (stating that "a party can waive its inconvenience by agreeing to venue in a district that actually is not the most convenient forum for it" and thereby "remove[] from the section 1404(a) balancing exercise its inconvenience that would otherwise support its adversary's transfer motion" (internal quotation marks and brackets omitted)).

The convenience of the Underwriter Defendants' *employees* may maintain some significance, however. *See Global Cash*, 2008 WL 4344531, at *4 n.8. Deka asserts that these employees' testimony "will be critical to the Underwriter Defendants' due diligence defense and to plaintiff's rebuttal of it." (Deka Br. at 11.) But while some underwriter employees may have relevant information, "[i]t is . . . unclear at this stage whether those witnesses would have to travel for the purposes of this case—especially if a deposition may be obtained rather than live testimony." *MASTR*, 880 F. Supp. 2d at 422. Furthermore, the primary issue in this case is whether the registration statement contained material misrepresentations concerning Santander's

auto lending business.  The Underwriter Defendants' potential due diligence defense will arise only if liability is established.

Deka next advances its belief that certain securities analysts who "covered Santander and the IPO" are "likely [to] work and/or reside in New York.  (Deka Br. at 12.)  Initially, Deka's evidence on this point is tentative: its counsel's declaration states only that three analysts who issued research reports concerning Santander are "likely" to have worked in financial entities' New York offices.  (*See* Dkt. No. 33 ("Caliendo Decl.") ¶¶ 50-52.)  But even assuming that New York-based securities analysts may be called to testify (though any relevant evidence could, as above, likely be taken through depositions), this has not been given much weight in other decisions in this district.  *See Erickson v. Corinthian Colls., Inc.*, No. 13 Civ. 4308 (PKC), 2013 WL 5493162, at *4 (S.D.N.Y. Oct. 1, 2013) ("Securities analysts lack personal knowledge of the circumstances regarding the alleged false statements, and therefore do not provide a significant tether to the Southern District of New York."); *Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc.*, No. 06 Civ. 1942 (HB), 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006). Accordingly, Deka's assertion that financial analysts who covered Santander probably work in New York deserves negligible weight.

Deka last argues that the employees of car dealerships located in New York City might be called as witnesses with relevant information concerning "Santander's subprime auto lending practices."  (Deka. Br. at 12.)  But the dealership employees are also not of great significance in the analysis of this factor.  While they could conceivably have relevant information relating to Santander's auto loan business, it appears that it is far more likely that the pivotal decisions concerning (among other things) loan origination and underwriting standards were made at Santander's Dallas headquarters.  Even if the car dealers were aware of some of these decisions,

Deka has not shown that the dealership employees' evidence on this point would be anything but cumulative. Finally, and perhaps most importantly, it is unclear why New York car dealers would be more likely to have information than any other car dealers. Car dealerships located in the Southern District of New York make up only a minute fraction of those with which Santander does business. (*See* Caliendo Decl. ¶ 48 (quoting a New York Department of Consumer Affairs press release stating that Santander has relationships with "dozens of car dealerships in New York City," out of its relationships with "nearly 14,000 automotive dealers" across the country (emphasis omitted)).)[3]

Ultimately, the evidence in the current record, in conjunction with the allegations of the complaint, indicates that the largest concentration of material witnesses will be in Dallas, including those Santander executives and employees involved in preparing the registration statement, as well as Santander personnel involved in the company's auto loan underwriting process. Thus, "notwithstanding that some tangentially related witnesses may reside in or near New York," *Elec. Workers Pension Fund v. Nuvelo, Inc.*, No. 07 Civ. 975 (HB), 2007 WL 2068107, at *4 (S.D.N.Y. July 19, 2007), the Court concludes that a greater number of material witnesses are located in the Northern District of Texas. Accordingly, this factor weighs in favor of transfer.

_____

[3] Deka also mentions as possible witnesses non-party "selling stockholders" and law firm advisors, some of whom are located in New York. (Deka Br. at 12-13.) Deka asserts that the selling stockholders—who "sold their shares to the public in the IPO" and "had a majority interest in (and thus control of) Santander both before and after the Offering"—"are likely to have discoverable information about Santander's subprime auto and other underwriting standards." (Deka Br. at 4, 12.) But Deka also states that Santander "did not exist until shortly before the Offering, and was formed solely to effect the Offering and the reorganization." (*Id.* at 4.) Accordingly, it is unclear whether the selling stockholders—who appear to have had a mainly mechanistic role—would have a significant amount of relevant information. Deka also offers no information about what testimony the law firm advisors could provide. (*See id.* at 12.)

b.        **Party Convenience**

As noted above, Santander itself is located in Dallas, and several of the Individual

Defendants also reside in Dallas.  (Pauner Decl. ¶¶ 8-9.)  According to information provided by

Deka, the other Individual Defendants live in New York, Massachusetts, Florida, and Spain.

(Caliendo Decl. ¶¶ 8-17.)  The convenience of those Defendants who "reside in neither the

transferor nor the transferee district . . . does not factor into the Court's analysis," *Global Cash*,

2008 WL 4344531, at *4, and the Individual Defendants in New York have joined Defendants'

motion for transfer; as noted above, a consenting party's convenience is not considered in the

transfer analysis.  *Id.* at *4 & n.8.  Last, according to Deka, the Underwriter Defendants'

principal offices are also mostly located in New York, with a few exceptions.  (*See* Caliendo

Decl. ¶¶ 19-35.)  But the Underwriter Defendants, too, join in Defendants' motion for transfer.

Neither Steck nor the two other parties seeking lead plaintiff status have opposed the

motion to transfer.  Deka—a German company—opposes the transfer, asserting that the New

York forum is more convenient for it.  (*Id.* at 17.)  However, Deka has not explained why any of

its personnel would be required to travel for purposes of this action, nor any other way that its

own participation in the suit would be easier in New York.  Rather, Deka cites only the fact that

"its counsel is a New York law firm that maintains no office in Texas."  (*Id.*)  But courts in this

district usually give little or no weight to attorney convenience.  *See Azari v. B&H Photo Video*,

No. 06 Civ. 7825 (DLC), 2007 WL 13101, at *3 (S.D.N.Y. Jan. 3, 2007) (stating that the

"location of counsel . . . is not a consideration in a motion to transfer venue"); *accord Marshall*

*Gobuty Int'l USA, Inc. v. Nike, Inc.*, No. 04 Civ. 6975 (SAS), 2004 WL 2578912, at *2 & n.23

(S.D.N.Y. Nov. 10, 2004); *see also Faigenbaum Mach., Inc. v. Scott & Williams, Inc.*, 344 F.

Supp. 1267, 1272 (S.D.N.Y. 1972) ("That [a plaintiff's] attorneys have their offices in this city is

of minor significance as against other factors favoring transfer.").  The Court also notes that a cursory search of filings in the Northern District of Texas reveals appearances in numerous cases in that district by Deka's counsel, Grant & Eisenhofer.[4]  Deka's preference for New York is of little moment.

In sum, Defendants all seek transfer; Plaintiff and two others seeking lead plaintiff status have not opposed it; and the only challenge to transfer comes from Deka, which presents only insignificant points in opposition.  Therefore, the convenience of the parties favors transfer.

### c.    Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Berger*, 2013 WL 4565256, at *10 (internal quotation marks omitted).  "In determining the locus of operative facts, courts look to the site of the events from which the claim arises." *MASTR*, 880 F. Supp. 2d at 423 (internal quotation marks omitted).   "Misrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received." *Nuvelo*, 2007 WL 2068107, at *5 (internal quotation marks omitted); *accord CenturyLink*, 2014 WL 1089116, at *3.  As noted above, "[t]he securities filings and press releases at issue in the complaint[] were prepared at and issued from [Santander's] Dallas headquarters." (Pauner Decl. ¶ 7.)  Moreover, the decisions concerning Santander's loan origination, underwriting, and securitization were at least in part made by employees in the Dallas office.  (*Id.* ¶ 8.)  Accordingly, Santander's "headquarters . . . [are] at the factual center of

---

[4] *See, e.g.*, Northern District of Texas Nos. 3:14-cv-03633-K, 3:14-cv-03401-K, 3:13-cv-01587-M-BN, 3:02-cv-02067-N, 3:02-cv-01152-M, 3:96-cv-1666-R, 3:96-cv-1436-R, 3:96-cv-1353-R. Grant & Eisenhofer's own website features a case in the Northern District of Texas in which the firm served as lead counsel.  *See* Cases in the Northern District of Texas, GRANT & EISENHOFER, http://www.gelaw.com/cases/case-search-by-district?case_district=Northern+District+of+Texas (last visited June 17, 2015).

this case, and the locus of all relevant decisionmaking." *AtheroGenics*, 2006 WL 851708, at *3. "Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." *Erickson*, 2013 WL 5493162, at *6 (internal quotation marks omitted).

Deka does not contest the fact that Santander issued the registration statements and made other vital decisions at its headquarters in Dallas.  Rather, Deka asserts that the operative facts are "split" between Texas and New York, citing the New York activity of certain Underwriter Defendants and Individual Defendants.  (Deka Br. at 17-18.)  But it is unclear exactly what New York-based conduct Deka is referring to, given that the involvement of both the Underwriter Defendants and the Individual Defendants in this matter resulted in the registration statement issued from Santander's Dallas headquarters—the central action in this case.  Moreover, courts in this district have held that the fact that "certain aspects of the IPO . . . occurred" in New York is "insufficient to pull the 'center of gravity' of th[e] litigation away from [the location of the issuer's headquarters], where the critical alleged misstatements and omissions occurred." *Global Cash*, 2008 WL 4344531, at *6 (citing cases).

Deka also asserts (relying on information outside the complaint) that an investigation by the New York City Department of Consumer Affairs into Santander's auto lending business "indicates that Santander's alleged deviation from its underwriting standards occurred in New York as well." (Deka Br. at 18.)  This is a slender reed.  As Deka acknowledges, Santander operates in all 50 states and has employees "throughout the U.S."  (Caliendo Decl. ¶¶ 3-4.)  Deka provides no reason to believe that more underwriting-related issues occurred in the Southern District of New York than in the Northern District of Texas—or, for that matter, than in any other district in the country.

Thus, although Deka may be correct in asserting that *some* facts relevant to this action

occurred outside Dallas, and that not *all* of the key witnesses are located there (*see* Deka Br. at

18), its arguments come up short.  Ultimately, a concentration of the most significant alleged

occurrences in this suit took place in the Northern District of Texas.  Accordingly, this factor

weighs in favor of transfer.

### d.    Location of Relevant Documents

Defendants assert that the majority of the relevant documents are located in Dallas.  (Dkt.

No. 24 ("Def. Br.") at 11.)  A Santander employee avers that "the vast majority of potentially

relevant documents—such as policies and procedures for [Santander's] origination, underwriting

and securitization businesses, financial data with respect to [Santander's] performance, and

Board minutes and materials—are located at [Santander's] offices in Dallas."  (Pauner Decl.

¶ 10.)  Deka counters that because the underwriter defendants and several Individual Defendants

are located in New York, "there are potentially millions of relevant documents in New York,"

and on this basis contends that this factor is neutral.  (Deka Br. at 21.)

The location of documents is entitled to relatively little weight, given that, in the modern

age, "documents may be transferred from one district to another district across the country with

little difficulty, using electronic means of duplication and transmission."  *Eres N.V.*, 605 F. Supp.

2d at 481.  Neither party asserts that there are "special factors that suggest the documents are not

accessible" electronically.  *Berger*, 2013 WL 4565256, at *10.

To the extent that the Court considers this factor, however, it slightly favors transfer.  The

Court concludes that it is more probable that the most relevant documents are located at

Santander's headquarters, rather than at the New York offices of certain Underwriter Defendants

or in the hands of certain Individual Defendants who reside in New York.  *See Nuvelo*, 2007 WL

2068107, at *5 (finding, in a securities class action, that "[a]lthough Plaintiffs aver that some documents relating to . . . the underwriters . . . will be produced from or near New York, . . . these documents (to the extent they actually reside in New York), like the witnesses, are far less relevant than the documents in [the transferee forum]").

### e.  Availability of Process

This factor "examines the Court's ability to compel the attendance of unwilling witnesses."  *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 442 (E.D.N.Y. 2012).  Where a party "fail[s] to provide any evidence that any [non-party witness] is unwilling to testify," many courts exclude this factor from the analysis.  *See Mazuma*, 1 F. Supp. 3d at 31 (citing cases).  Furthermore, in the usual case, "any witness unwilling to appear can be adequately represented through deposition testimony."  *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998).

Deka asserts that it is likely to call non-party witnesses from "New York used car dealerships that dealt with Santander in making subprime auto loans," who "w[ill] in all likelihood refuse to travel across the country to testify in Dallas."  (Deka Br. at 24.)  Deka provides no evidence to support its speculation about their attendance, however.  Nor is there reason to believe that there are more car dealers who are potential witnesses within the reach of the Southern District of New York than the Northern District of Texas, as noted above. Accordingly, this factor is neutral.

### f.  Weight Accorded to Plaintiff's Forum Choice

"[T]he degree of deference given to a plaintiff's forum choice varies with the circumstances."  *Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*, No. 13 Civ. 5474 (DLC), 2013 WL 6467889, at *2 (S.D.N.Y. Dec. 10, 2013) (internal quotation marks omitted).

In general, a "plaintiff's choice of forum is entitled considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant." *City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*, No. 10 Civ. 376 (RWS), 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010) (internal quotation marks omitted).  However, "a plaintiff's choice of forum is accorded substantially less deference when the forum is neither the plaintiff's home nor the place where the operative facts of the action occurred." *Wilson*, 27 F. Supp. 3d at 537 (internal quotation marks omitted).  Furthermore, the weight of the choice "is reduced in a stockholder class action, where members of the class are dispersed throughout the nation." *CenturyLink*, 2014 WL 1089116, at *3 (internal quotation marks and ellipsis omitted); *accord City of Pontiac*, 2010 WL 2035130, at *3.

Steck's own residence is not set out in the complaint, and according to Deka's opposition to the transfer motion, "is unknown." (Deka Br. at 5 n.4.)  Even if Steck resides within the Southern District of New York, "the residence of a class representative is often a mere happenstance, which may be discounted by a court when weighing transfer factors." *Erickson*, 2013 WL 5493162, at *6 (internal quotation marks omitted).  Accordingly, Plaintiff's choice of forum deserves minimal deference in this case.

### g.      Trial Efficiency and the Interests of Justice

*Efficiency*.  Deka argues that "court congestion" weighs against transfer.  (Deka Br. at 23.)  Some decisions have made a comparison based on the number of cases per active judge in the transferor and transferee districts.  *See, e.g.*, *City of Pontiac*, 2010 WL 2035130, at *5.  This Court, however, "tread[s] lightly on the issue of comparing calendar congestion across federal districts," and instead seeks to serve "the collective efficiency of the federal courts" by attempting to locate the forum that will advance "overall convenience."  *Duro Textiles, LLC v.*

*Ricci*, No. 14 Civ. 705 (JPO), 2014 WL 641443, at *3 (S.D.N.Y. Feb. 18, 2014) (Oetken, J.).

Accordingly, the Court assigns little weight to docket statistics.  Furthermore, the present action

is "in its infancy, and thus a transfer . . . would not cause any undue delay."  *City of Pontiac*,

2010 WL 2035130, at *5.

     *Pendency of a similar action in Texas district court.*  "Many courts have recognized that

transfer is appropriate when two cases involving the same issues are simultaneously pending in

different district courts."  *MASTR*, 880 F. Supp. 2d at 424 (internal quotation marks omitted).

Defendants argued in their briefing that their request for transfer was supported by the pendency

of another action against Santander, on similar grounds, in the Northern District of Texas.  *See*

*Kumar v. Santander Consumer USA Holdings, Inc.*, No. 3:14-cv-3746-K (N.D. Tex. removed

Oct. 20, 2014).  However, the *Kumar* action has since been discontinued with prejudice.  *See*

Notice of Dismissal With Prejudice, *Kumar* (N.D. Tex. filed Feb. 18, 2015) [Dkt. No. 33].

Accordingly, the now-defunct *Kumar* action does not affect the Court's determination of the

transfer motion.  The "efficiency and interests of justice" factor is therefore neutral.[5]

     **3.**    **Conclusion**

     In sum, the analysis of the foregoing factors favors transfer, particularly in light of the

fact that Plaintiff's choice of a New York forum deserves minimal deference.  The most central

events to this securities action occurred at Santander's headquarters in Dallas, which also houses

many of the crucial witnesses and documents.  While some parties, potential witnesses, and

---

[5] Deka also argues that "fundamental fairness" militates against transfer in this case, because
Defendants "agreed" that the case would be litigated in the Southern District of New York.
(Deka Br. at 7-8, 23.)  Deka is mistaken.  Defendants agreed to a stipulation setting a briefing
schedule for lead plaintiff appointment motions and for responding to a later-filed operative
complaint.  (*See* Dkt. No. 14.)  There was no agreement that "this case would be litigated in this
Court," as Deka suggests.  (Deka Br. at 23.)

17

documents may reside in New York, the Court is persuaded that these New York contacts are outweighed by the greater number of principal witnesses, and relevant documents, located at Santander's headquarters.  The Court concludes that Defendants have met their burden of making a convincing demonstration that the convenience factors favor transfer.  Accordingly, Defendants' motion is granted.

**B.      Motions to Appoint Lead Plaintiff**

Because the Court grants Defendants' transfer motion, it will leave the determination as to the appointment of the lead plaintiff and lead counsel to the transferee court.  Accordingly, the motions for appointment as lead plaintiff are denied without prejudice.

**III.    Conclusion**

For the foregoing reasons, it is hereby ORDERED that:

Defendants' motion to change venue is GRANTED, and this case is hereby TRANSFERRED to the United States District Court for the Northern District of Texas.

The motions to be appointed lead plaintiff filed by Benard, Deka, and Dearborn Heights are DENIED without prejudice to renewal in the transferee court.

The Clerk of the Court is directed to close the motions at docket numbers 15, 17, 20, and 23, and to effectuate the transfer.

SO ORDERED.

Dated: June 17, 2015
       New York, New York

_____
                J. PAUL OETKEN
              United States District Judge

18